Pell, Circuit Judge, dissented and filed opinion.

NORTHERN ILLINOIS GAS COMPA-
NY, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 83–2143.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1984.

Decided Sept. 10, 1984.

As Corrected Sept. 13, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 10, 1984.

Edward C. Rustigan, Mayer, Brown & Platt, Chicago, Ill., for plaintiff-appellant.

Donald H. Olson, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before PELL and FLAUM, Circuit Judges, and HENLEY, Senior Circuit Judge.*

FLAUM, Circuit Judge.

The appellant Northern Illinois Gas Company brought this action in federal district court seeking a refund of $483.03 paid in highway motor vehicle use taxes. The government denied that the appellant was entitled to a refund and counterclaimed for the outstanding balance of the assessments made against the appellant, $93,205.25, plus interest. The district court ruled in favor of the government. 554 F.Supp. 371, reconsideration denied and judgment amended 560 F.Supp. 928. We affirm.

I.

The appellant owns a number of utility trucks that are equipped with pintle hooks [1] suitable for towing heavy trailers. The issue in this case is the validity of a treasury regulation and revenue ruling permitting the Internal Revenue Service (IRS) to tax these trucks as though they were customarily used in combination with heavy trailers, without first determining whether trucks of that type are in fact customarily used with heavy trailers.

Section 4481(a) of the Internal Revenue Code, 26 U.S.C. § 4481(a) (1982), provides:

A tax is hereby imposed on the use of any highway motor vehicle which (together with the semitrailers and trailers *customarily used in connection with highway motor vehicles of the same type* as such highway motor vehicles) has a taxable gross weight of more than 26,000 pounds ... (emphasis added).

Taxable gross weight is defined in section 4482(b) as follows:

(1) the actual unloaded weight of—

(A) such highway motor vehicle fully equipped for service, and

(B) the semitrailers or trailers (fully equipped for service) *customarily used in connection with highway motor vehicles of the same type* as such highway motor vehicle, and

(2) the weight of the maximum load *customarily carried on highway motor vehicles of the same type* as such highway motor vehicle and on the semitrailers and trailers referred to in paragraph (1)(B) (emphasis added).

Section 4482(b) also gives the Secretary of the Treasury the authority to determine taxable gross weight through regulations, "which regulations may include formulas or other methods for determining the taxable gross weight of vehicles by classes, specifications, or otherwise."

Pursuant to section 4482(b), the Secretary promulgated Treasury Regulation § 41.4482(b)–1(d), which established three main classifications of vehicles for purposes of applying section 4481(a)'s tax: (1) single unit vehicles; (2) tractor-trailer combinations; and (3) truck-trailer combinations. It also provided a schedule of taxable gross weights for vehicles based on these classifications, as well as on the vehicle's actual unloaded weight and the number of axles on the vehicle. Subsection (d)(3), the provision at issue here, specified that trucks that were "equipped for use" in combination with trailers may be classified as truck-trailer combinations and taxed as such under the taxable gross weight schedule. In 1976, the IRS issued Revenue Ruling 76–294, 1976–2 C.B. 364, which stated that utility trucks that were equipped with a pintle hook or other coupling device capable of towing heavy trailers (trailers with two or more axles or one-axled trailers

---

* The Honorable J. Smith Henley, Senior Circuit Judge for the Eighth Circuit, is sitting by designation.

1. A pintle hook is a mechanism that can be attached to the back of a motor vehicle enabling it to pull a trailer or other piece of equipment equipped with an eye within which the hook will fit. Appellee's Brief at 3.

weighing more than 6000 pounds) were "equipped for use" in combination with trailers. Thus, these trucks began to be taxed as truck-trailer combinations under the schedule created pursuant to section 4481(a), regardless of whether the trucks were actually or customarily used with heavy trailers.[2]

The appellant challenges the validity of Treasury Regulation § 41.4482(d)(3) and Revenue Ruling 76–294. It argues that by establishing a rule that utility trucks merely *equipped* to haul heavy trailers are taxable as truck-trailer combinations, the Treasury Department has abrogated the statutory requirement, found in sections 4481 and 4482, that only vehicles *customarily used* with heavy trailers may be taxed as truck-trailer combinations.[3] The appellant's position is that in order to tax a particular vehicle as though it were a truck-trailer combination, the IRS first must find that, on a nationwide basis, heavy trailers are in fact customarily used with that type of vehicle.[4] The government argues in response that it was within the Secretary's discretion under section 4482(b) to classify trucks equipped to haul heavy trailers as trucks "customarily used" with heavy trailers.

## II.

As a threshold matter, we note that two circuits already have addressed the precise issue before us in this case, and have reached different results. In *Northern States Power Co. v. United States*, 663 F.2d 55 (8th Cir.1981), *aff'g* 503 F.Supp. 1182 (D.Minn.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982), the Eighth Circuit affirmed a district court ruling that the Secretary properly exercised his authority under section 4482 in allowing trucks equipped with pintle hooks to be taxed as truck-trailer combinations. One month later, the Ninth Circuit, without mentioning the *Northern States Power* decision, took a contrary position. It held that before the IRS may tax a vehicle as a truck-trailer combination, section 4482 required that it make a factual determination

2. The appellant argues that for many years prior to issuing Revenue Ruling 76–294, the IRS had taken the position that a truck should be taxed as a truck-trailer combination only after a finding that trailers are customarily used with that type of truck. The appellant argues that because the IRS took this position contemporaneous with the enactment of §§ 4481 and 4482, we should give it great weight as evidence of congressional intent. It also argues that Congress's failure to change this administrative construction was ratification of it. However, even assuming that the IRS originally did take the position that the appellant alleges it did, this would not mean that it believed this was the only position allowable under the statute. "The Commissioner [of the IRS] is under no duty to assert a particular position as soon as the statute authorizes such an interpretation." *Dickman v. Commissioner*, ── U.S. ──, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343 (1984). Thus, we may draw no inferences from the position that the appellants attribute to the IRS, and that position is of no significance here.

3. The appellant also challenges the validity of Revenue Ruling 76–294 on procedural grounds. Section 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1982), establishes a set of procedural requirements applicable to agency rulemaking that is legislative in nature. The appellant argues that "the Internal Revenue Service's attempt to impose its 'equipped for use in

combinations' rule upon NI-Gas constitutes an act of legislative rulemaking which is subject to the Administrative Procedure Act." Appellant's Brief at 30. The flaw in this argument is that it was the Secretary of the Treasury, not the IRS, who promulgated the "equipped for use" standard, and it is undisputed that the Secretary did comply with the APA in so doing. The IRS merely ruled that utility trucks with pintle hooks qualified as "equipped for use" in combination with trailers. This clearly was interpretative rulemaking, not legislative rulemaking, and thus it was exempt from the procedural requirements of § 553 of the APA. *See generally Wing v. Commissioner*, 81 T.C. 17, 26–28 (1983) ("revenue rulings ... have been held to be the classic example of an interpretative ruling and exempt from the notice and comment provisions of the APA section 553").

4. The appellants have not argued that their trucks may be taxed as truck-trailers only if those trucks are actually customarily used with trailers. Such an interpretation of §§ 4481 and 4482 clearly would be precluded by the language of those provisions, since §§ 4481 and 4482 refer not to trailers customarily used with the taxable vehicle, but rather to trailers customarily used with vehicles *of the same type* as the taxable vehicle.

that heavy trailers are customarily used with that type of vehicle. *Pacific Gas & Electric Co. v. United States*, 664 F.2d 1133 (9th Cir.1981). Although both the Eighth and Ninth Circuit positions are reasonable, we agree with the court below that the Eighth Circuit's is the preferred view.

■ In this case, as in any case involving judicial review of treasury regulations, we must keep in mind the broad discretion that the Secretary of the Treasury has in administering our nation's tax laws. Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981) (quoting *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)). Deference to the Secretary is particularly appropriate where, as here, the regulation in question was issued pursuant to a specific grant of authority to administer a statutory provision. *United States v. Vogel Fertilizer*, 455 U.S. 16, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982).

■ We find that the language of sections 4481 and 4482 does not preclude taxation of the appellant's trucks as truck-trailer combinations. The "customarily used" language on which the appellant relies must be read in combination with the language in section 4482(b), which authorizes the Secretary to develop "formulas and other methods" for determining the taxable gross weight of vehicles. Because the "customarily used" requirement is integral to the determination of taxable gross weight, we read section 4482(b) as permit-

ting the Secretary to develop a short-hand method for determining whether a certain type of vehicle is customarily used in combination with heavy trailers. Thus, we reject the appellant's argument that sections 4481 and 4482 require the IRS to tax a particular vehicle as though it were customarily used with a heavy trailer only if it first finds that that type of vehicle is in fact customarily used with heavy trailers.

■ Having determined that regulation 41.4482(d)(3) is not plainly inconsistent with the language of sections 4481 and 4482, we must determine the reasonableness of the regulation. We find that the Secretary's "equipped for use" standard is a reasonable implementation of the "customarily used" standard contained in the statute. It is not unreasonable to assume that vehicles are equipped for use with heavy trailers for the purpose of using them with heavy trailers. Thus, it was not unreasonable for the Secretary to rule that a vehicle equipped for use with a heavy trailer is, for the purposes of section 4481, a type of vehicle customarily used with a heavy trailer.[5] It may be, as the appellants contend, that many vehicles that are equipped for use with heavy trailers are not customarily used with heavy trailers. However, in permitting the Secretary to create general classifications to be used in determining taxable gross weight in particular cases, Congress clearly was not insisting on accuracy in every case. Rather, it was acknowledging implicitly that formulas and classifications that may be overbroad or underbroad are often necessary to the efficient administration of a tax collection system. As the Third Circuit has stated in

---

5. In 1983, Congress amended § 4482, essentially codifying regulation 41.4482(d)(3). The new provision, § 4482(c)(5), went into effect on July 1, 1984. It states:

CUSTOMARY USE. A semitrailer or trailer shall be treated as customarily used in connection with a highway motor vehicle if such vehicle is equipped to tow such semitrailer or trailer.

Pub.L. No. 97–424, 97th Cong., 2d Sess. § 513(c) (1983). Both parties have asked us to draw inferences favorable to their positions from the

passage of this legislation, and they both have supported their positions with reasonable arguments. After considering the matter, we find none of their arguments compelling, and conclude that no inference about the state of the law before the 1983 amendment should be drawn from that amendment. However, we do find the 1983 amendment significant in that it diminishes any doubt about the rationality of treating vehicles that are equipped for use with trailers as vehicles that are customarily used with trailers.

this very context, "[w]hat must be balanced is the advantage of convenience in assessment and collection with admitted inaccuracies in some individual instances." *Atlas Transportation Co. v. United States,* 263 F.2d 573, 576 (3rd Cir.), *cert. denied,* 360 U.S. 918, 79 S.Ct. 1437, 3 L.Ed.2d 1534 (1959) (upholding the validity of the use tax schedule established in Treasury Regulation § 41.4482 as it applied to the taxpayer's trucks, even though the schedule assigned a taxable gross weight of 27,000 pounds to a vehicle actually weighing 13,-000 pounds). The government has argued that the "equipped for use" standard is easier to administer than the "customarily used" standard, and we have no cause to doubt this. Thus, we hold that regulation 41.4482(d)(3) was a reasonable exercise of the Secretary's discretion. Furthermore, in light of this holding, and because we have no reason to question the reasonableness of the IRS's view that utility trucks with pintle hooks are "equipped for use" in combination with trailers, we find that Revenue Ruling 76–294 also was valid.[6] Accordingly, we affirm the decision of the district court.

PELL, Circuit Judge, dissenting.

With due respect, I must dissent from the majority's approval of Treasury Regulation § 41.4482(d)(3), which disregards the customary-use test set forth in the statute and instead imposes a less equitable equipped-for-use test to determine which taxpayers are saddled with liability for the highway use tax. In my opinion the Ninth Circuit correctly resolved the issue in *Pacific Gas and Electric Co. v. United States,* 664 F.2d 1133 (9th Cir.1981).

The majority correctly states that the regulation must be sustained unless unreasonable and inconsistent with the statute. *Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). Although this standard grants the Secretary discretion in promulgating regulations with which to administer the tax laws, that discretion is limited.

The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law— no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.

*Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936); *see also Mohasco Corp. v. Silver,* 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980) (EEOC may not adopt regulations inconsistent with statute.).

Because I agree with the Ninth Circuit that the IRS's interpretation of 41.-4482(d)(3) is not in harmony with the statute, I cannot subscribe to the majority's conclusion that the equipped-for-use test is a reasonable shorthand test for determining whether a type of truck is *customarily* used in combination with a heavy trailer.

The principal redeeming factor, as I see it, in favor of arbitrarily adopting this stringent, but unrealistic, equipped-for-use test is that it will produce more money for the public fisc. While this may be cheery news to taxpayers not affected, it also reflects a motivational factor not entirely alien to those charged with the duty of collecting taxes.

Here, however, there is more involved than merely increasing the total of general revenue and that is the objective of keeping in repair our constantly deteriorating highways. For the purposes of meeting that problem, Congress imposed a tax on the use of highways. Logically the intent of Congress was that the highway use tax bear most heavily on those whose use of

---

**6.** The appellant also has argued that "the Internal Revenue Service has improperly discriminated against plaintiff-appellant in its position toward utility trucks." Appellant's Brief at 23. As we understand the argument, the appellant is claiming that Revenue Ruling 76–294 is invalid because it treats utility trucks differently from other types of trucks. We have considered this argument and find it to be without merit.

the highway caused the most wear and tear. Imposing the tax on those types of trucks that are customarily used with heavy trailers is a reasonable method of determining which types of trucks should bear the burden of the tax. The customary-use test is not a fine-tuned means of apportioning the burden of the use tax, but it is related to the actual use of the highways by a type of truck. The equipped-for-use test, in contrast, is inconsistent with Congress's attempt to apportion the tax equitably. The equipped-for-use test is not reflective of the actual use of heavy trailers. A pintle hook, by itself, causes no additional wear on a highway. As the evidence appellant attempted to introduce demonstrates, utility trucks equipped with pintle hooks more often than not are *not* used in combination with heavy trailers.

The majority correctly points out that ease in administration is an important aspect of the tax laws. However, here Congress took that factor into account by developing a standard that only requires a simple determination of whether a type of truck is customarily used in combination with heavy trailers. This showing is not unduly burdensome and is a reasonable means of determining who should pay the tax. I do not think that this point was addressed adequately in *Northern States Power Co.* in which the utility argued that the IRS must show that each truck was customarily used with a trailer. The court properly rejected this argument, but then jumped to the conclusion that the equipped-for-use test was a proper means of determining the customary usage of a type of truck. *Northern States Power Co.* then is of minimal value in evaluating appellant's claim.

Because I view the IRS's current application of the equipped-for-use test as plainly inconsistent with the statute's mandated customary-use test I do not evaluate the parties' other claims. I do note, however, that the fact that appellant's reading of the statute was long accepted by the IRS is entitled to some weight in judging the reasonableness of its current application. This previous acceptance by the IRS is

brushed aside in a marginal note in the majority opinion by what amounts in effect to the rather startling proposition that the Secretary is entitled to change his mind, or putting it otherwise, that the law is what the Secretary currently calls it. The fact is here that there was evidence showing, whatever the duty to do so might have been, there was a "particular position" taken.

A system of tax collection which deprives the commercial and industrial world of the opportunity of basing budgetary and other fiscal planning matters on a firm and consistent standard, rather than on one comparable to shifting sand, it seems to me, is one which should be soundly condemned as not being in the best interest of the national economy.

Also, I find it disturbing that this case manifests another example of the apparent disinclination of the tax collecting authorities to put a hand on the oar in the interest of promoting national uniformity and coherence in the application of federal tax laws. *See* Ginsburg, *Making Tax Law Through the Judicial Process*, 70 A.B.A.J. 74, 77 (March 1984) ("The tax law has become an extraordinarily intricate game played to arcane, often conflicting rules that often lack moorings in any discernible policy.").

The Government, of course, had no basis for endeavoring to have the Supreme Court review the *Northern States Power* decision. But a month later a square conflict among the circuits was created by *Pacific Gas.* The Government thereupon apparently was willing to forego this silver tray opportunity to seek finality on the troublesome issues presented, and, thereby to seek consistent national construction of the statute. Instead the approach of the Eighth Circuit was adopted although presumably not so in the Ninth Circuit. The Eighth Circuit opinion was a one page opinion affirming a summary judgment in a summary fashion. The Ninth Circuit opinion was by contrast an analytical opinion.

Finally, I am not unmindful that the continued application of the regulation may no longer be a source of other inconsistent opinions as to tax consequences visited on vehicles of the involved types after July 1, 1984. The substantial sum of tax dollars at stake, however, involving such vehicles prior to that date causes a proper resolution of the issue to be of continued vitality and importance. The majority opinion finds in the passage of the 1983 amendment some significance to the effect that Congress was recognizing the rationality of the regulation.

I fail to find any rationality in the adoption of this simplistic approach, although it is bound to increase revenues for highways, an aspect recognizable certainly by the Congress. Clearly the action bears no rational relationship to the issue of whether vehicles merely accepted for use per se contribute to the wear and tear of the highways in the manner that vehicles "customarily used" in combination with heavy trailers do. It strikes me that a reasonably strong inference is presented that Congress was doing nothing more than opting for the money producing aspects of the simplistic test although that test was irrationally related to its own express purpose of imposing the test on vehicles "customarily used." I express no opinion, leaving for further litigation, often indecisive as we know from prior appeals on the general issue, the question of whether removable coupling devices used only occasionally will bring the equipment within the ambit of the 1983 amendment.

For the foregoing reasons, I would reverse and remand for a factual determination of the customary use of this type of utility truck. Accordingly, I dissent.