**Ralph F. WATERMAN, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 98–2053.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1999.

Decided June 3, 1999.

124

**ARGUED:** William Fielding . Young, Hunton & Williams, Washington, D.C., for Appellant. Randolph L. Hutter, Tax Division, United States Department of Justice, Washington, D.C., for Appellee. **ON BRIEF:** Cynthia L. Mire, Hunton & Williams, Richmond, Virginia, for Appellant. Loretta C. Argrett, Assistant Attorney General, Richard Farber, Tax Division, United States Department of Justice, Washington, D.C., for Appellee.

Before WILKINSON, Chief Judge, KING, Circuit Judge, and LEE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge LEE wrote the majority opinion, in which Chief Judge WILKINSON joined. Judge KING wrote a dissenting opinion.

**OPINION**

LEE, District Judge:

Ralph F. Waterman ("Waterman") appeals from the United States Tax Court's decision that there is a deficiency in income tax due for the taxable year 1992 in the amount of $7,536.00 for a $44,946.49 special separation benefit he received as a result of his acceptance of an early separation offer from the Navy. The issue is whether the Tax Court correctly held that a $44,946 payment made to a taxpayer by the Navy pursuant to an early separation agreement is not excludable from income under I.R.C. § 112(a) as "compensation received for active service in a combat zone." Finding no reversible error, we affirm.

**I.**

Waterman served in the Navy as an enlisted member for fourteen years and three months. From January 1 through May 4, 1992, Waterman was stationed aboard the U.S.S. America in the Persian Gulf, which was a designated combat zone at that time. On April 20, 1992, Waterman accepted an early separation from service offer, which included a special separation payment ("separation payment") made by the Navy as part of its downsizing program under 10 U.S.C. § 1174a. By accepting the Navy's offer, Waterman agreed to leave the Navy and to give up any pension benefits that would have been available to him after he had completed 20 years of service.

In May 1992, Waterman left the U.S.S. America and the Persian Gulf, and he received an honorable discharge from the Navy. The Navy paid Waterman a separation benefit of $44,946.49, the calculation of which was based in part on the length of Waterman's service. At that time, the Navy advised Waterman that he was not required to include the separation payment in his gross income.[1] The Navy did with-

---

1. The dissent argues that the government

"shamelessly double-crossed Mr. Waterman"

hold $9,158.69, primarily for federal income taxes. Waterman requested a refund of the withheld taxes and the Navy issued him a check representing the federal income tax withheld. Waterman did not file an income tax return for the 1992 tax year.

The Commissioner of Internal Revenue ("Commissioner") determined that the separation payment constituted taxable income and issued Waterman a notice of deficiency on February 27, 1995, determining a tax deficiency of $10,038. The Commissioner also determined that Waterman was liable for additions to tax. Waterman filed a petition in United States Tax Court ("Tax Court") in May 1995, and an amended petition in July 1995, seeking a redetermination of the deficiency. Waterman contended that the separation payment was excludable from his income under I.R.C. § 112. The parties fully stipulated the facts in the case and there was no trial held. During the proceedings in Tax Court, the Commissioner conceded the additions to tax and also conceded that because Waterman's separation payment was calculated based upon his time of service in the Navy, the portion of his service spent in a designated combat zone was excludable from his gross income.

The Tax Court considered a "matter of first impression involving whether an early separation payment, the right to which arose and became fixed while a member of the military was serving in a combat zone, is excludable from gross income under section 112." The Tax Court reviewed the statutory language in I.R.C. § 112(a)(1), which is often called the "combat zone exception" because it excludes compensation for active service in a combat zone from taxable gross income. Due to the lack of legislative history, the Tax Court considered regulations touching upon the meaning of compensation in that statute. In deciding whether a separation payment is compensation received for active service in a combat zone, the Tax Court noted that the statutory language concerning when and how the compensation must be earned is not ambiguous. The Tax Court interpreted the regulations to mean that the time and place of payment are irrelevant when considering whether compensation is excludable under § 112.

■ The Tax Court held that the separation payment was in exchange for Waterman's agreement to leave the military. Although measured by length of service, the Tax Court noted, the payment was not *for* prior service, in a combat zone or otherwise. Because the payment was in exchange for the agreement to leave the Navy early, the payment did not qualify as compensation received for active service under the statute. Thus, Waterman was required to include the separation payment in his gross income for 1992. The portion of the payment based on service spent in a designated combat zone was not included in the gross income calculation because the Commissioner conceded that the portion was excludable. The Tax Court noted that under its interpretation of the statute, no such portion should be excluded, but it did not require payment of taxes on that portion due to the Commissioner's concession

by inducing him to accept the separation offer based on a purported tax benefit. There is no evidence in the record to support a finding of any such inducement. Indeed, the evidence is to the contrary. During the proceedings before the Tax Court, the parties stipulated to the following: "Upon acceptance of the Navy's early separation offer, the petitioner was advised by the Navy that payments received pursuant to his early separation would be excludable from gross income if accepted while serving in a designated combat zone."

(J.A. at 6). The Tax Court accepted this stipulation by placing it in the decision. (J.A. at 19). Thus, Waterman had already accepted the separation offer when he learned of the supposed tax benefit. Furthermore, Waterman's counsel admitted at oral argument that the IRS is not bound by a statement by the Navy about the excludability of the separation benefit. Waterman's counsel also stated that he was *not* arguing that the IRS is estopped by the Navy's posture on this issue.

that the portion was excludable.[2]

Thus, the Tax Court determined that Waterman was deficient in paying income tax on the special separation benefit. This appeal followed.

## II.

We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States district courts. *Ripley v. Commissioner of Internal Revenue*, 103 F.3d 332, 334 n. 3(4th Cir.1996); *Estate of Waters v. Commissioner of Internal Revenue*, 48 F.3d 838, 841–42 (4th Cir.1995). Questions of law, such as whether the separation payment was excludable from Waterman's income, are reviewed under the *de novo* standard and findings of fact are reviewed for clear error. *Ripley*, 103 F.3d at 334 n. 3; *Estate of Waters*, 48 F.3d at 842. The Tax Court's interpretation of statutory language is also reviewed under the *de novo* standard. *Estate of Waters*, 48 F.3d at 842.

## III.

Waterman's primary argument is that because he became entitled to the separation payment while he was on active service in a combat zone, he was entitled to exclude it from his gross income under I.R.C. § 112(a)(1). Waterman points to Treasury Regulation § 1.112–1(b)(4), which provides that the time and place of the entitlement to compensation determine whether the compensation is excludable under section 112. Waterman also claims that the Navy made a similar conclusion when it initially withheld taxes from the payment, but subsequently refunded the withholding upon Waterman's request under the § 112 combat zone exception. Waterman contends that a separation payment should be treated no differently than

other types of compensation that are excludable under section 112, such as dislocation allowances, reenlistment bonuses, pay for accrued leave, compensation for employment in clubs and messes, and awards for suggestions, inventions, or scientific achievements.

The core issue here is whether a separation payment for an agreement to leave service early in lieu of retirement which accrues while the service member is on active duty in a combat zone constitutes compensation for active service such that it is excluded from gross income under § 112(a). The Court holds that this separation payment does not fall within the § 112(a) definition of "compensation received for active service."

Section 112(a) of the Internal Revenue Code provides in pertinent part:

(a) Enlisted personnel

Gross income does not include compensation received for active service as a member below the grade of commissioned officer in the Armed Forces of the United States for any month during any part of which such member—

(1) served in a combat zone....

I.R.C. § 112(a)(1) (1988). Treasury Regulation § 1.112–1(b)(4) provides in relevant part:

[T]he time and place of the entitlement to compensation determine whether the compensation is excludable under section 112. Thus, compensation can be excluded under section 112 whether or not it is received outside a combat zone ... provided that the member's entitlement to the compensation fully accrued in a month during which the member served in the combat zone.... For this purpose, entitlement to compensation fully accrues upon the completion of all

---

2. Whether a stipulation entered into by parties to a tax case should be set aside is a matter within the sound discretion of the tax court, which we review for an abuse of discretion. *Balkissoon v. Commissioner of Internal Revenue*, 995 F.2d 525 (4th Cir.1993). Presumably because the Tax Court did not set aside the stipulation, neither party has argued this issue and the Court declines to address it.

actions required of the member to receive the compensation.

■ Judicial review of an agency regulation that construes a statute entails a two-step process. First, we must determine whether the statute directly addresses the precise issue before us. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Snowa v. Commissioner of Internal Revenue*, 123 F.3d 190, 195 (4th Cir.1997) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Second, if the statute is silent or ambiguous in expressing congressional intent, we must determine whether the agency's interpretation is based on a permissible construction of the statute. *Snowa*, 123 F.3d at 195. We give great deference to the Commissioner's interpretation and uphold any Treasury Regulation that implements the statutory purpose in a reasonable manner. *See Rowan Cos. v. United States*, 452 U.S. 247, 252, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981).

The Court holds that the statutory language in § 112 is clear and unambiguous. Section 112(a) excludes from the calculation of income tax any "compensation received for active service ... in a combat zone." The Court finds no error in the Tax Court's finding that Waterman's separation payment did not constitute compensation for active service in a combat zone. Waterman's separation payment was not made for his service in the Persian Gulf. Rather, the Navy paid Waterman a separation payment in exchange for his agreement to leave Navy service early and forego any right to pension benefits.

The Court holds that the time and place of acceptance of the separation payment are irrelevant to this determination. On this point, Treasury Regulation § 1.112–1(b)(4) is helpful. It contains an example involving a reenlistment bonus, stating that it can be excluded from income as combat zone compensation although it was received outside the combat zone. The exclusion was not based on where the enlisted member was when he received the payment. Instead, the member was entitled to the exclusion because he became entitled to the reenlistment bonus during a month in which he served in the combat zone.

Waterman argues that under that example, he should be entitled to the combat zone exclusion because he accepted the separation payment while serving in the combat zone. Thus, his entitlement to the separation payment "fully accrued" during a month in which he actively served in a combat zone. We disagree.

The entitlement argument is inapposite because the time and place of the entitlement are irrelevant to the determination of an exclusion in this case. The Treasury Regulation example may be distinguished from this case because the reenlistment bonus falls under the definition of "compensation received for active service." The member who reenlisted will serve again, perhaps in a combat zone. Waterman's separation payment was not compensation for active service. It was a payment to entice Waterman to leave service. Thus, whether Waterman was in a combat zone when he accepted the Navy's offer of a separation payment is irrelevant. Section 112(a) does not premise the exclusion *solely* on the location of the enlisted personnel. Rather, the exclusion is based on whether the compensation is for active service and whether that service is in a combat zone.

Because the separation payment was not compensation for Waterman's service but an inducement to leave Navy service, the Court holds that Waterman was not entitled to the exclusion for combat zone service. The Commissioner stipulated that a portion of Waterman's separation payment was excludable based on the amount of time Waterman did serve in a combat

zone.[3] Despite its lack of agreement with that conclusion, the Tax Court decided not to disturb the exclusion of that portion of the separation payment due to the stipulation. We will not disturb the Tax Court's decision on that issue.

The dissent gives short shrift to the issue of whether a separation payment constitutes compensation under section 112. According to the dissent, because the separation payment is neither a pension nor a retirement payment, which are both excluded by section 112(c)(4), it must be compensation. Under this interpretation, any payment for any act while in a combat zone would be excludable. Such a reading was not intended and is not permissible because the language of the statute is plain. Section 112(c)(2) clearly states "compensation received for active service" not acceptance of a separation payment. The separation payment was not "compensation" or payment for active service, as the dissent concedes must be proven, rather it was a "severance deal, a deal which the government had actively sought as part of its post-war downsizing program." *Dissent,* at 133. Treasury Regulation 1.112–1(b)(4), which the dissent cites, supports the conclusion that the exclusion applies to compensation for services rendered, not to payments like the separation benefit. That regulation provides, "Compensation received by a member of the Armed Forces *for services rendered while in active service* can be excluded under section 112...." (Emphasis added.) Waterman did not receive the separation payment as compensation for services ren-

dered while in active service. He received the separation payment in exchange for his agreement to leave active service and forego any future right to pension benefits. Nonetheless, Waterman did receive an exclusion for the compensation he did receive for services rendered while in active service. The Commissioner stipulated to such an exclusion and despite the Tax Court's disagreement with that conclusion, the exclusion was upheld.

## IV.

Finding no clear error, we affirm the Tax Court's decision that there was a deficiency in income tax due from Waterman for the separation payment he received during the taxable year 1992.

*AFFIRMED.*

KING, Circuit Judge, dissenting:

Because § 112 of the Internal Revenue Code authorizes Mr. Waterman to exclude from gross income the special separation payment made to him by the Navy, I must dissent. Exclusion of this payment is required by the plain language of § 112 and is confirmed by the provisions of Treasury Regulation § 1.112–1.[1]

## I.

Section 112 provides tax benefits to a member of the Armed Forces who serves in an officially designated combat zone. *See* § 112(c)(2) (defining "combat zone"). Those service members are entitled to ex-

---

**3.** The dissent argues that the fact that the separation payment was calculated based on the length of Waterman's active service supports the conclusion that the separation payment was for active service. *Dissent* at 129–30. That position is untenable not only because the manner of calculation does not determine whether the payment constitutes compensation, but also because the separation payment was not measured *solely* by the length of Waterman's active service. Rather, the Tax Court found that the amount of the "separation payment was, *in part,* measured

by petitioner's 14 years and 3 months of active military service." (J.A. at 19).

**1.** As discussed in more detail in Part III, *infra,* the Navy agreed with this interpretation of § 112 and used it to induce Mr. Waterman to accept the separation package. As the majority acknowledges, when Mr. Waterman was induced to give up his military career after over fourteen years of honorable service, "the Navy advised Waterman that he was not required to include the separation payment in his gross income." *Ante* at 124.

clude certain "compensation" from gross income:

> Gross income does not include compensation received for active service as a member ... in the Armed Forces of the United States for any month during any part of which such member—
>
> (1) served in a combat zone, . . . .

I.R.C. § 112(a). Giving § 112 its clear meaning, a member of the Armed Forces seeking to exclude income under this section must prove three elements: (1) the income to be excluded is "compensation," (2) the compensation is payment for "active service" in the Armed Forces, and (3) the compensation is paid for any month during any part of which the taxpayer "served in a combat zone."

### A.

First, there is no question that Mr. Waterman's special separation payment satisfies § 112's first element. The statute does not define the operative term "compensation," except to say that it does not include "pensions and retirement payments." § 112(c)(4). The parties agree that the separation payment is neither a pension nor a retirement payment, thus it is compensation under § 112.

### B.

The third element also is satisfied. Section 112's exclusion applies to compensation earned any time during a month, as long as the taxpayer served in a combat zone "for any part of" that month. Treas. Reg. § 1.112–1(b)(3). Further, it does not matter when or where the taxpayer actually receives the payment at issue. Instead, § 112 excludes that compensation if the service member's "entitlement to the com-

pensation *fully accrued* in a month during which the member served in a combat zone." § 1.112–1(b)(4) (emphasis added). Treasury Regulation 1.112–1(b)(4) further defines "fully accrued" in a common-sense, transactional manner: "[E]ntitlement to compensation fully accrues upon the completion of all actions required of the member to receive the compensation." *Id.*

Here, Mr. Waterman served in a designated combat zone during April 1992. On April 20, 1992, Mr. Waterman accepted the Navy's offer of early separation. Acceptance of this offer was the final act required of Mr. Waterman to receive the special separation payment. Consequently, Mr. Waterman's entitlement to the payment fully accrued during April of 1992, a month in which he served in a combat zone, and the payment therefore satisfies the third element of § 112.

Example 5 of Treasury Regulation 1.112–1(b)(5) is illustrative and controlling.[2] This example confirms that a member of the Armed Forces who voluntarily reenlists while serving in a combat zone may exclude the reenlistment bonus under § 112, even though the member actually receives the bonus outside of the combat zone and in the following tax year. Exclusion is permitted because "the member completed the necessary action for entitlement to the reenlistment bonus in a month during which the member served in the combat zone." § 1.112–1(b)(5), ex. 5. Likewise, Mr. Waterman accepted separation—thus became entitled to the separation payment—during April 1992, a month during which he served in a combat zone.

### C.

The only remaining question is whether Mr. Waterman's separation payment satis-

---

**2.** Example 5 provides:

In July, while serving in a combat zone, an enlisted member voluntarily reenlisted. After July, the member neither served in a combat zone nor was hospitalized for wounds incurred in the combat zone. In February of the following year, the member received a bonus as a result of the July reenlistment. The reenlistment bonus can be excluded from income as combat zone compensation although received outside of the combat zone, since the member completed the necessary action for entitlement to the reenlistment bonus in a month during which the member served in the combat zone.

§ 1.112–1(b)(5), ex. 5.

fies the second element of § 112, that is, whether it constitutes payment "for active service" in the Armed Forces. Section 112 itself does not define "active service." Instead, the definition appears in the interpreting Treasury Regulation:

> A member of the Armed Forces is in active service if the member is actually serving in the Armed Forces of the United States.

§ 1.112–1(b)(1). Given this explanation—which the majority ignores—the for-active-service element can be rephrased as whether, at the time the member became eligible for the compensation in question, he or she was "actually serving" in the Armed Forces. Treasury Regulation 1.112–1(b)(4) confirms this reading of § 112: "Compensation received by a member of the Armed Forces *for services rendered while in active service* can be excluded under section 112 . . . ." (emphasis added).

Again, the examples in regulation 1.112–1(b)(5) illustrate this rule. The examples authorize exclusion of compensation for a wide range of services rendered while in active service, provided that compensation otherwise satisfies § 112. *See* § 1.112–1(b)(5), ex. 1 (basic pay excludable); ex. 2 (payment for days of annual leave excludable); ex. 4 (cash award for employee suggestion excludable); ex. 5 (reenlistment bonus excludable). The only unifying theme among these diverse activities is that the member performing each of them was in active service at the time of performance.

Example 5, the reenlistment example, is most analogous to Mr. Waterman's case. As explained above, this example permits a service member who voluntarily reenlists while serving in a combat zone to exclude the resulting reenlistment bonus from income. § 1.112–1(b)(5), ex. 5. The reasoning behind this example is straightforward:

> The reenlistment bonus can be excluded from income as combat zone compensa-

tion although received outside of the combat zone, since the member *completed the necessary action for entitlement* to the reenlistment bonus in a month during which the member served in the combat zone.

*Id.* (emphasis added). Example 5 thus demonstrates that a service member's act of accepting a standing offer from the military—in that case, the offer of compensation for reenlistment—constitutes "services rendered in active service" for the purposes of § 112.

Like the service member in Example 5, Mr. Waterman accepted the proposal of the Navy regarding the term of his active service: Mr. Waterman agreed to terminate his service; the member in Example 5 agreed to renew his or her service. In both cases, then, a service member has accepted the military's offer of additional compensation in exchange for his agreement to take action that the military has requested, either leaving or reenlisting in the Armed Forces. Further, Mr. Waterman, like the member in the reenlistment example, accepted this offer while in active service in a combat zone.[3] Because there is no legally relevant distinction between Mr. Waterman's case and the facts of Example 5, I must conclude that Mr. Waterman's separation payment was "for active service," and thus is excludable from his gross income under § 112.

Interestingly, the position taken by the IRS in the Tax Court all but conceded this point. Before the Tax Court, the IRS acknowledged that the amount of the separation payment depended on the length of Mr. Waterman's active service. The IRS further admitted that a portion of the separation payment was attributable to Mr. Waterman's active service in a combat zone, thus was excludable. Significantly, the IRS did not contend that the payment was not "for active service" at all, as the majority concludes; instead, it sought to

---

**3.** Indeed, only a service member *in* active service can, logically, accept a separation package, which, by definition, requires the service member to *leave* active service.

include in income only the percentage of the payment attributable to Mr. Waterman's non-combat-zone service, a result that neither § 112 nor its regulations supports. Thus, the IRS's own position before the Tax Court suggests that the separation payment is compensation for active service.

## II.

I cannot agree with the majority's attempt to distinguish the authorities discussed above. Most importantly, the majority cannot convincingly distinguish Example 5 of the applicable regulation. Also, by requiring a logical link between the compensation at issue and combat zone service, the majority both misreads § 112 and heightens the administrative burdens associated with the statute.

### A.

First, both the majority and the Tax Court seek to distinguish Example 5 on the ground that a reenlistment bonus is substantively different from a separation payment. Specifically, they note that those who reenlist might possibly serve again in a combat zone, whereas those who leave the service, like Mr. Waterman, will not. *Ante* at 127; *Waterman v. Commissioner,* 110 T.C. 103, 108, 1998 WL 48482 (1998).

This is simply a distinction that makes no difference. First, Example 5 itself does not mention the potential for future combat zone service as a basis for its reasoning. Rather, the example posits precisely the opposite: the service member in that example never served in a combat zone after reenlisting. § 1.112–1(b)(5), ex. 5. The explanation set forth in the example simply does not address the *substance* of the offer accepted by the service member or the practical consequences of that acceptance. If § 112's exclusion of reenlistment bonuses is motivated by the possibility of future combat zone service, the IRS

certainly has obscured that motive well in drafting Example 5.

Second, Example 6 of regulation 1.112–1(b)(5) strongly undercuts the majority's rationale. In Example 6, the service member is barred from excluding a reenlistment bonus because the member did not reenlist in a month during which the member served in a combat zone. § 1.112–1(b)(5), ex.6. This is so even though the service member actually received the reenlistment bonus *while serving in a combat zone.* *Id.* If, as the majority contends, the possibility of future combat zone service motivated the exclusion of reenlistment bonuses, one would expect that *all* reenlistment bonuses would be excludable, because *all* reenlisting service members face the possibility of combat zone service. Further, one would certainly expect that a bonus *actually paid* during combat zone service would be excludable. But the regulations do not permit exclusion of all reenlistment bonuses, regardless of whether they are received during combat zone service. Only reenlistment bonuses earned during a month in which the member serves in a combat zone are excludable. Consequently, the majority's posited rationale for Example 5—that it rewards the possibility of future combat zone service— is unfounded.

### B.

Additionally, this rationale appears to grow out of what, I conclude, is the misreading of § 112 by the majority and the Tax Court. Both the majority and the Tax Court suggest that there must be a causal connection between combat zone service and the compensation at issue. The Tax Court expressed this conclusion as follows: "Use of the word 'for' in the § 112(a)(1) language 'compensation received for active service ... in a combat zone' requires that the compensation be earned *for a person's service in a combat zone."* *Waterman,* 110 T.C. at 106 (ellipsis in original) (emphasis added).

The Tax Court's use of the ellipsis in this quotation is telling, because it has omitted another use of the word "for" in § 112(a)(1). In addition to permitting exclusion of compensation *for* active service in a combat zone, § 112(a)(1) excludes a broader set of compensation, namely active-service compensation received *"for* any month during any part of which [the] member served ... in a combat zone." Like the Tax Court—and significantly— the majority omits this second "for" throughout its opinion. *See, e.g., ante* at 124 ("The issue is whether the Tax Court correctly held that a $44,946 payment ... is not excludable from income under I.R.C. § 112(a) as 'compensation received for active service in a combat zone.' "); *ante* at 125 ("[Section 112] excludes compensation for active service in a combat zone from taxable gross income."); *ante* at 127 ("Section 112(a) excludes from the calculation of income tax any 'compensation received for active service ... in a combat zone.' ") (ellipsis in original); *ante* at 127 ("Rather, the exclusion is based on whether the compensation is for active service and whether that service is in a combat zone.").

By ignoring the effect of the phrase "for any month," the majority and the Tax Court have improperly restricted the scope of § 112. Example 1 of Treasury Regulation 1.112–1(b)(5) makes clear that § 112 allows exclusion of *all* compensation for active service earned during a month, even if the taxpayer served in a combat zone *for only one day* of that month.[4] *See* § 1.112– 1(b)(5), ex. 1. Specifically, Example 1 explains that all basic pay for December 1 through 31 is excludable if the member serves in a combat zone only on December 4. *Id.* Thus thirty-one days' worth of pay may be excluded, even if the work done to earn thirty days of that pay had no connection to the single day of combat zone service. As a result, both the Tax Court and the majority have simply misapplied § 112 when they read it as permitting exclusion only of compensation earned for active service in a combat zone.[5]

## C.

In addition to shaping the scope of § 112, the "for any month" phrase serves a broader policy of the tax code itself. The Tax Court correctly identified § 112's primary goal, which is to benefit service members "whose lives were placed at risk because of their service to their country." *Waterman,* 110 T.C. at 106. But the statute implements this primary policy in a

---

4. Example 1 provides:

On January 5, outside of a combat zone, an enlisted member received basic pay for active duty services performed from the preceding December 1 through December 31. On December 4 (and on no other date), the member performed services within a combat zone. The member may exclude from income the entire payment received on January 5, although the member served in the combat zone only one day during December, received the payment outside of the combat zone, and received the payment in a year other than the year in which the combat zone services were performed.

§ 1.112–1(b)(5), ex. 1.

5. Additionally, the IRS's own official interpretation of § 112 in Revenue Ruling 71–343 further confirms that there need be no logical link between combat zone service and the compensation to be excluded. *See* Rev. Rul. 71–343, 1971–2 C.B. 92. In this ruling, the IRS concludes that, among other types of compensation, dislocation allowances qualify as "pay for active service," thus are eligible for exclusion under § 112. *Id.* Dislocation allowances are payments made to compensate a service member for expenses associated with moving his or her household as a result of a permanent change of station. If the move for which the allowance is paid is commenced or completed in a month during any part of which the member served in a combat zone, the allowance is excludable under § 112. *Id.*

Family moving expenses ordinarily would have no connection at all to active service in a combat zone, and, in any event, the Revenue Ruling does not require proof of such a connection before permitting exclusion. Indeed, the fact that the move occurs within a month in which the service member has served in a combat zone could be due to pure coincidence. Revenue Ruling 71–343 therefore confirms that, contrary to the majority's position, § 112 permits exclusion of much more than pay for active service in a combat zone.

way that promotes a secondary, but critically important, tax code policy: administrative ease. *See, e.g., Rowan Cos., Inc. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981) (noting "ease of administration" as policy behind particular income tax withholding rule); *Central Ill. Pub. Serv. Co. v. United States,* 435 U.S. 21, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978) (same); *United States v. Jefferson–Pilot Life Ins. Co.,* 49 F.3d 1020, 1023 (4th Cir. 1995) (noting that "continuing levy" provision was enacted to ease administrative burden on IRS); *Northern Ill. Gas Co. v. United States,* 743 F.2d 539, 542–43 (7th Cir.1984) (discussing ease of administration as policy behind certain tax on utility trucks).

By making all active-service compensation excludable if earned during any month in which the taxpayer served, no matter how briefly, in a combat zone, Congress has avoided requiring taxpayers to prove—and requiring the IRS to examine—whether the entire amount of compensation was, in fact, received *because of* service in a combat zone. Although § 112 thereby permits exclusion of compensation unrelated to combat zone service, such overbreadth is a common cost of easy tax administration: "[F]ormulas and classifications that may be overbroad or underbroad are often necessary to the efficient administration of the tax collection system." *Northern Illinois Gas Co.,* 743 F.2d at 542. The majority's misreading of the statute will increase administrative burdens on the taxpayer and the IRS alike by requiring both to evaluate whether the compensation at issue was *for* active service in a combat zone.

The failure by the majority and the Tax Court to take account of the "for any month" language of § 112 lead them to improperly and erroneously require some proof that the compensation received was *for* combat-zone service. Neither the plain language of § 112 nor that of its accompanying regulations requires such proof. Further, if properly read and applied, § 112 allows exclusion of the special separation payment at issue here.

III.

Although § 112 and its interpreting regulations are dispositive of Mr. Waterman's appeal, this case also raises another troubling concern. The United States government, acting through officers of its Navy, informed Mr. Waterman—who was then serving his country in a combat zone—that the full amount of his separation benefit would be excludable from his gross income if immediately accepted. Mr. Waterman took the government's advice and accepted its offer. Later, the same government—this time acting through the IRS—refused to allow Mr. Waterman the tax benefits it had previously promised him as part of his severance deal, a deal which the government had actively sought as part of its post-war downsizing program.

As explained above, the IRS was legally wrong. But whether right or wrong on the law, the government has also shamelessly double-crossed Mr. Waterman. American citizens, especially those who risk their lives in the service of their country, deserve better.

I respectfully dissent.